UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARI RODRIGUEZ,<br><br>   Plaintiff,<br><br> v.<br><br>CITY OF CHICAGO,<br><br>   Defendant. | No. 24 CV 8245<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mari Rodriguez's residential building is near a busy six-way intersection and across from a daycare center. Rodriguez has a disability that limits her mobility, so used a driveway apron on the lot adjacent to her building to access transportation to her medical appointments and errands. Her apartment has an alleyway next to it, but drivers won't pick her up there due to traffic from the daycare center. After Rodriguez confronted parents about blocking the driveway, the daycare center passed along complaints to the local alderman. The alderman's staff began pressuring Rodriguez's landlord to evict her and decided to remove the driveway apron. Rodriguez sued the City, alleging claims under the Americans with Disabilities Act and Fair Housing Act. The City moves to dismiss.

**I. Legal Standards**

When reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a court accepts all well-pled allegations as true and draws all reasonable inferences in favor of the plaintiff. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 881 (7th Cir. 2022). "To survive a motion to dismiss, a plaintiff must plead 'only enough facts to

state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II. Facts

Plaintiff Mari Rodriguez has rented the same apartment for nine years in Chicago. [9] ¶ 4.[1] Her building was one lot south of a six-way intersection and across from a daycare center, which owned and used a parking lot across an alley from Rodriguez's building. [9] ¶ 8. The daycare center also had a storage unit next to her apartment building that backed up to the alley. [9] ¶ 8. The alley served as access for the daycare's parking lot and for delivery trucks to load and unload supplies at the storage unit. [9] ¶ 9. The six-way intersection and daycare created significant traffic in the alley and streets surrounding Rodriguez's building. [9] ¶¶ 10–11.

Rodriguez had pain, circulation issues, and arthritis in her knees that limited her ability to walk, which worsened after a severe fall in 2022. [9] ¶¶ 15–19. She could not move more than a few steps at a time, needed to take breaks to recover from her pain, and had to use a cane or walker. [9] ¶¶ 20–22. Rodriguez attended physical therapy and medical appointments one to three times a week as part of her treatment. [9] ¶ 23. She could not drive herself to appointments or other errands, so relied on a

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. When a document has numbered paragraphs, I cite to the paragraph, for example [9] ¶ 1. The facts are taken from plaintiff's amended complaint, [9]. Rodriguez presents additional facts in her response to the city's motion to dismiss. [19]. I do not consider those facts on this motion. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) ("[A] plaintiff may not amend h[er] complaint in h[er] response brief.").

medical transportation provider, friends, family, or neighbors for transportation. [9] ¶¶ 24–25.

Due to traffic, it was not safe for Rodriguez to be picked up in the street or alley. [9] ¶ 31. During pick-up and drop-off hours at the daycare, teachers and parents would often drive over the speed limit and pass inches from stopped vehicles. [9] ¶ 29. Multiple drivers experienced near-misses with other cars while stopped on the street or alley to pick up Rodriguez. [9] ¶ 30. So, all her drivers insisted on picking up Rodriguez at the apron. [9] ¶ 29. Drivers could pull up on the apron where Rodriguez could enter and exit the vehicle without risking injury. [9] ¶ 33.

Rodriguez's use of the driveway resulted in "verbal confrontations between her and drivers who park[ed] in front of the concrete apron." [9] ¶ 36. These "confrontations were presented as complaints to the daycare center, which, in turn, repeated them to the local alderman's office." [9] ¶ 38.

In February 2024, Rodriguez and her landlord began receiving threatening communications from aldermanic staff, daycare staff, and block residents. [9] ¶ 39. In March 2024, the alderman's Community Relations Director gathered a group outside of Rodriguez's building to intimidate her, shouting that Rodriguez should move out or be evicted. [9] ¶¶ 40–41. Rodriguez and her landlord then received visits and communications from multiple city departments, initiated by complaints of the group. [9] ¶¶ 42–43. In April 2024, the director met with Rodriguez's landlord, pressuring him to evict her. [9] ¶¶ 44–46. The landlord served Rodriguez a thirty-day

notice of non-renewal but declined to file an eviction case after the notice period expired. [9] ¶¶ 46–47.

In May 2024, Rodriguez overheard a City Department of Transportation worker, an aldermanic representative, and the daycare owners discussing how to move the street egress for Rodriguez's building to the alley. [9] ¶¶ 48–49. Shortly after, Rodriguez and her landlord observed CDOT employees spray painting and marking the apron. [9] ¶ 50. When approached, the workers claimed they were preparing a survey for a traffic study. [9] ¶ 51. Rodriguez's landlord renewed his annual permit for the apron in May 2024. [9] ¶ 52. The permit was placed on hold a month later. [9] ¶ 53. Weeks later, the landlord learned that the alderman's office intended to use discretionary funding to raise the concrete apron and create a curb. [9] ¶¶ 56, 68. He also learned that the alderman's office had promised the daycare center that it would create additional parking in place of the apron and would re-zone the parking lot adjacent to the building. [9] ¶ 57. The landlord was told that if he "got rid" of Rodriguez, all of his troubles would go away and that he would get his permit for the driveway. [9] ¶ 58.

Rodriguez similarly understood from CDOT that the removal of the apron was at the direction of her alderman. [9] ¶ 59. Rodriguez emailed CDOT in June 2024 requesting that the apron not be removed because she needed it due to her disability. [9] ¶ 60. Rodriguez did not receive a response and filed this lawsuit seeking a restraining order to stop the work. [9] ¶¶ 62–64.

4

Rodriguez's motion for a temporary restraining order was denied, [12], and the apron was removed in October 2024, [19] at 1. Rodriguez contends that the driveway's removal violates her rights under the Americans with Disability Act and Fair Housing Act. [9] ¶¶ 65–85. The City moves to dismiss her complaint. [16].

III. Analysis

    A.    Americans with Disability Act

Under Title II of the ADA, "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by" a local government. 42 U.S.C. §§ 12131–32. Public entities must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). To state a claim under Title II, a plaintiff must allege that: (1) she is a qualified individual with a disability; (2) she was denied the benefits of the services, programs, or activities of a public entity, or otherwise subjected to discrimination by such an entity; and (3) the denial or discrimination was because of her disability. *Moore v. W. Illinois Corr. Ctr.*, 89 F.4th 582, 594 (7th Cir. 2023).

The City argues that Rodriguez does not allege that she was excluded from any services, programs, or activities, and that even if she did, her accommodation request to reinstall the driveway is unreasonable and unnecessary. [16-1] at 4–9.

5

Rodriguez's complaint does not specifically identify what City service she is challenging as inaccessible. Rodriguez focuses her complaint on the deprivation of the driveway. Title II "applies to all services, programs, and activities provided or made available by public entities." 28 C.F.R. § 35.102(a). The driveway was not a "service" provided by the city. The driveway was created and permitted for use by the neighboring commercial property, not the general public nor Rodriguez as a tenant. Under the Municipal Code of Chicago, a driveway may be maintained by a permit holder, which requires an application "by the owner or, with the consent of the owner, by a long-term leaseholder [minimum of ten years] of the property to which the proposed driveway is to be connected." MCC §§ 10-20-390, -405, -410. Rodriguez is not the property owner nor a long-term leaseholder of the commercial property. *See* [9] ¶ 2.

Further, when a "property to which a driveway is attached has been physically rendered unusable as a driveway . . . , the commissioner may order the driveway removed and the sidewalk and public parkway space where the driveway is located restored to its proper condition so that the portion of the sidewalk and public parkway space used for the driveway shall be safe for public travel and in the same condition as the remaining portion of the sidewalk and public parkway space." MCC § 10-20-442(c). This includes when "a business served by a commercial driveway ceases operation and there is no business activity conducted at that location." MCC § 10-20-442(b)(1). The property served by the driveway is currently vacant. *See* [9] at 19

("vacant front building shop"). The apron is not a city provided service to which Rodriguez is being denied access.

To the extent that Rodriguez challenges Chicago's public right-of-way—its sidewalks, curb ramps, crosswalks, etc.—as the service at issue, her claim also fails. Maintaining and constructing public sidewalks are normal functions of the City and public ways are subject to accessibility regulations. *See Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002). But Rodriguez does not allege that the sidewalks or curb are inaccessible to her because of her disability.

In her response to the City's motion to dismiss, Rodriguez argues that she has difficulties stepping a curb and without the apron, she will need to walk a block to a safe pick-up location, which would risk falls and further injury. *See* [19] at 2. This is not an argument that the sidewalks are inaccessible, but that the City was required to provide Rodriguez with a driveway apron. But that is not a city service. Rodriguez has not alleged that she was denied a city service because of her disability.[2]

Rodriguez also claims that the City is liable under the ADA because it did not engage in an interactive process to find a reasonable accommodation with Rodriguez. [9] ¶ 73. The City cannot be held liable under that theory because Title II does not require public entities to engage in an interactive process to identify necessary and reasonable accommodations. *See* 42 U.S.C § 12132. Rodriguez's ADA claim is

---

[2] I do not reach the City's arguments that Rodriguez's requested accommodation is unreasonable and unnecessary.

7

dismissed with prejudice, because it would be futile to amend the claim against the City over accessibility to a driveway apron that is not a city service.

## B. Fair Housing Act

Under 42 U.S.C. § 3604(f)(3)(A), it is unlawful to refuse "to permit at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises." "Full enjoyment of the premises" requires an "accessible route," *i.e.*, a "continuous unobstructed path connecting accessible elements and spaces in a building or within a site." 24 C.F.R. § 100.201. A site is "a parcel of land bounded by a property line or a designated portion of a public right or way." *Id.*

While exterior accessible routes may require "curb ramps," *id.*, Rodriguez does not seek modification of the premises she occupies but wants to alter the public way outside of a neighboring property, [9] ¶ 13; [9] at 18 (showing driveway was part of the lot adjacent Rodriguez's residence); [19] at 4 (acknowledging driveway was in front of adjacent property). While Rodriguez's landlord owns both her building and the adjacent lot, the driveway was not within the property line of Rodriguez's residence such that it falls within the "premises" of her dwelling under the FHA. Rodriguez's FHA claim is dismissed with prejudice, because amendment would be futile; a new complaint could not change the apron's location to within Rodriguez's "premises" under the FHA.

8

## C. Retaliation

Rodriguez's claim references the prohibitions against retaliation in the ADA and FHA.[3] "To prove retaliation, a plaintiff must show that: (1) she engaged in protected activity; (2) she suffered an adverse action; and (3) there was a causal connection between the two." *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 868 (7th Cir. 2018). Rodriguez has not alleged facts that support a causal connection between her exercise of rights under those federal statutes and an adverse action by the City. Rodriguez alleges that her alderman's representatives became involved in February 2024 after increased "confrontations between her and drivers who park[ed] in front of the concrete apron." [9] ¶¶ 39–45. These conflicts were reported to the neighboring daycare who took them to the alderman's office. [9] ¶ 38. Rodriguez alleges that she notified CDOT of her disability months after in June 2024. [9] ¶¶ 60–62. She does not allege that the alderman's staff were aware of her disability or her communications with CDOT regarding her need for the apron. Considering this timing, Rodriguez has not alleged a connection between asserting her rights under the ADA or FHA and the alleged retaliatory behavior. Rodriguez's retaliation claims are dismissed with prejudice. Although plaintiffs are ordinarily given an opportunity to cure defects in a complaint before a case is dismissed, here, the City has twice alerted Rodriguez to the causation problem in her retaliation claims, [7-1] at 10–11; [16-1] at 10–12, and Rodriguez has not suggested how she

---

[3] Rodriguez's complaint could be suggesting retaliation by the alderman in response to Rodriguez's exercise of her right to petition the government. But the alderman is not a defendant here, and that kind of claim is not raised in Rodriguez's briefing.

9

could cure that problem. Rodriguez is on her Fourth Amended Complaint, and further amendment would be futile.

## IV. Conclusion

Defendant's motion to dismiss, [16], is granted. Plaintiff's request for monetary and injunctive relief, [19], are denied. The Fourth Amended Complaint is dismissed with prejudice. Enter judgment and terminate civil case.

ENTER:

                                                Manish S. Shah
                                                United States District Judge

Date: February 6, 2025